**AFFIDAVIT OF JOHN OLIVEIRA IN SUPPORT OF CRIMINAL COMPLAINT**

I, John Oliveira, do hereby depose and state as follows:

1.      I am a Police Officer with the Somerville Police Department and have been so employed for twenty three years.  In 2000, I was assigned to the Detective Bureau of the Somerville Police Department.  In June 2008, I was assigned to the FBI Violent Crimes Task Force ("the VCTF").  The VCTF is comprised of personnel from the FBI, Massachusetts State Police, Boston, Somerville, Malden, Dedham, and Saugus Police Departments. The VCTF investigates bank robberies, as well other violent crimes, which are punishable under federal and state law.

2.      During my tenure as a law enforcement officer, with both the Somerville Police Department and the VCTF, I have interrogated numerous defendants, informants, and suspects who were users, sellers and/or distributors of controlled substances and who also had violent criminal records. I have additionally been involved in numerous investigations involving assaults, larcenies, extortion, arson, firearms violations, armed and unarmed robberies, prostitution, homicides and crimes against persons. Since joining the VCTF, I have investigated or assisted with hundreds of bank robbery investigations.  I have been the affiant in multiple search warrants, both State and Federal.

3.      I am aware that Title 18, United States Code, Section 2113(a) makes it a crime for anyone by force and violence, or by intimidation, to take, or attempt to take, from the person or presence of another, any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of any federally insured bank. I am also aware that Title 18, United States Code, Section 2113(d) makes it a crime to assault or put in jeopardy any person by the use of a dangerous weapon or device while taking money belonging to or in

1

the care, custody, control, management, or possession of any federally insured bank.  I am
further aware that Title 18, United States Code, Section 924(c)(1)(A) makes it a crime to
discharge a firearm during and in relation to a crime of violence. Additionally, I am aware that
Title 18, United States Code, Section 922(g)(1) makes it a crime for a person, previously
convicted in court of a crime punishable by imprisonment for a term exceeding one year, to
possess a firearm in and affecting commerce.

4.      I submit this affidavit in support of an application for criminal complaint charging
DANIEL ROSADO ("ROSADO"), date of birth xx/xx/1986 with the following criminal charges:
1) Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a) and (d); 2) Brandishing and
Discharging a Firearm During a Crime of Violence, in violation of 18 U.S.C. §  924(c)(1)(A)(ii)
and (iii); and, 3) Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).  The
facts stated herein are known to me through the investigation and through observations made by
others with whom I have spoken.  This affidavit does not contain all the facts known to me but
rather only those which are sufficient to establish probable cause that ROSADO committed the
above-mentioned offenses.

## Probable Cause

### The Bank Robbery – Middlesex Federal Savings Bank, May 1, 2019

5.      On May 1, 2019 at approximately 9:57 a.m., a man ("the robber") entered through the
College Avenue entrance of the Middlesex Federal Savings Bank ("Middlesex Bank"), located at
One College Avenue, Somerville, MA, and bank then insured by the Federal Deposit Insurance
Corporation. While inside the bank, the robber brandished a handgun and fired the gun into the
ceiling.  The robber also pointed the firearm at customers and bank employees. Witnesses within
and around the Middlesex Bank reported hearing the robber yell to bank employees: "Get

Down!", "Everybody on the ground!", "Second Drawer, Hurry Up!", and "Give me money or I'll shoot!" In response to the robber's demands, customers and bank employees laid on the floor. When the robber approached a teller window, he threw a black backpack at the teller, and made a verbal demand for money.

6.      As the teller filled up the backpack with money, a customer exited out the Highland Avenue exit of the bank and flagged down a marked police cruiser occupied by a fully-uniformed officer with the Somerville Police Department ("SPD officer"). The witness told the SPD officer that he heard a commotion coming from inside the bank. The SPD officer then entered the bank from the Highland Avenue entrance, pointed his department-issued firearm at the robber, and ordered the robber to freeze. In response to the SPD officer's commands, the robber turned and faced the SPD officer, pointed a firearm in the SPD officer's direction, and fired one shot. The SPD officer returned fire. During the exchange of gunfire, the robber exited the College Avenue exit of the bank and fled on foot northbound onto College Avenue. The SPD officer ran after him.

7.      Outside of the bank on College Avenue, a bystander (whose identity is known to law enforcement) saw the SPD officer chase the robber. The bystander attempted to tackle the robber, causing the robber to drop the black backpack in the area of 19 College Avenue. The robber continued to run northbound on College Avenue. Witnesses lost sight of the robber after he turned right onto Winslow Avenue.

8.      The robber's backpack contained, amongst other things, a firearm and United States currency. The firearm was a Webley revolver, loaded with four unfired rounds of ammunition and two cartridge casings.

9.      The United States currency recovered from the backpack totaled $529.00 and was in

various denominations.

10.     A post-robbery audit conducted at the Middlesex Bank determined that the robber took $929.00 in United States currency during the robbery.

11.     Witnesses provided agents with a physical description of the robber. Witnesses provided varying estimations of the robber's height. Witnesses further described the robber as a Hispanic male, medium build, dressed in a dark colored winter knit cap, a hooded camouflage coat with a Nike logo on the left chest, a glove on his left hand, blue jeans, and black sneakers with white soles. Witnesses further stated he was carrying a black backpack and a handgun.

12.     Bank interior and exterior cameras captured the robbery. I have reviewed the camera footage from the bank and found it consistent with both the witnesses' description of the crime and the suspect. I also reviewed surveillance camera footage from nearby commercial establishments which depicts the robber fleeing from the bank, the bystander attempting to stop the robber from fleeing, and the robber dropping the black backpack.

### Identification of ROSADO

13.     Law enforcement submitted items recovered at the crime scene to the Crime Laboratory of the Massachusetts State Police for forensic analysis. Samples were taken of the straps, buckles and zippers of the black backpack that the robber dropped on College Avenue. These forensic samples were submitted for analysis. On May 18, 2019, the Crime Laboratory informed the FBI that the samples from the backpack were linked to a DNA profile from the Combined DNA Index System ("CODIS"). The DNA profile was that of Daniel Santos ROSADO (xx-xx-1986).[1]

14.     Agents reviewed a photograph associated with ROSADO's Rhode Island driver's license. This photograph was taken on or around May 16, 2019.  I reviewed this photograph and

---

[1] Prior to receiving notification of the DNA profile match, the government sought and served a Cellular Tower Dump Order in an effort to identify the previously unidentified Target Suspect. The results are still pending.

compared it to the video surveillance in and around Middlesex Bank depicting the bank robbery and its aftermath. I believe the individual depicted in the May 16, 2019 license photograph is the same person as the one who robbed the Middlesex Bank on May 1, 2019.

15.     Additionally, ROSADO's height and weight listed on his driver's license and various police reports are consistent with witness statements from the bank robbery.

16.     During the investigation, law enforcement obtained a police report from a January 14, 2019 car stop by East Bridgewater Police Department ("EBPD"). The driver of the car was ROSADO. As a result of the stop, the EBPD officer issued ROSADO a citation for operating on a suspended license.  On May 19, 2019, I provided the EBPD officer video surveillance from the May 1, 2019 Middlesex Bank robbery and requested that the officer contact me after he reviewed the video. Minutes later, the EBPD officer contacted me after reviewing the video surveillance. The EBPD officer identified the bank robber as ROSADO, the driver of the car he stopped on January 14, 2019. The EBPD officer stated that during the car stop, his interaction with ROSADO lasted about 30 minutes because he interacted with ROSADO at length while waiting for a licensed operator to take ROSADO's car.

17.     On May 20, 2019, a photo array was shown to an employee of Middlesex Bank who witnessed the May 1, 2019 bank robbery.  The photo array was provided by a blind presenter from the Somerville Police Department.  The array consisted of eight photos shown in sequential order.  The witness reviewed all eight photos in sequential order and positively identified Photo #4 as the man who robbed Middlesex Bank on May 1, 2019.  Photo #4 depicted Daniel ROSADO.

**Rosado's Criminal History**

18.     I have reviewed ROSADO's criminal history as maintained by the Massachusetts

Criminal History Systems Board. It reveals, among other things, that ROSADO was convicted of

Negligent Operation of a Motor Vehicle out of New Bedford District Court and received a

sentence of two years committed. Further, he was convicted of Larceny from a Person and

Witness Intimidation in 2012 out of New Bedford District Court. Additionally, he was convicted

of Assault by means of a Dangerous Weapon in 2012 out of New Bedford District Court and

received a sentence of two years committed. I have determined that all of these crimes are

punishable under Massachusetts law by imprisonment for more than one (1) year and therefore

preclude ROSADO from possessing a firearm or ammunition.

**The Discharged Firearm and Interstate Nexus**

19.     As noted above, the bank robber (now identified as ROSADO) discharged a firearm into

the ceiling and at the SPD officer. The backpack discarded by the robber on College Avenue

contained a firearm. This firearm was a black Webley revolver with serial number 149749. This

revolver is capable of holding six rounds. Inside the revolver were two expended shell casings,

three intact rounds, and one intact round with dimpled primer.

20.     On May 17, 2019, a firearms trace summary performed on the recovered firearm revealed

the firearm was a Webley Mark IV .38 caliber revolver manufactured in the United Kingdom.

Furthermore, the total six rounds of ammunition were .38 caliber Smith and Wesson and were

manufactured by Starline, Inc. Starline, Inc. is based out of Sedalia, Missouri.

21.     As also noted above, the SPD officer discharged his department-issued firearm in

response to the bank robber pointing and shooting a firearm in his direction. The SPD officer's

department issued firearm was recovered and is a Sig Sauer 9mm semi-automatic firearm.

22.    I know based upon my training and experience that after a bullet is discharged from a semi-automatic firearm, like the SPD officer's 9mm Sig Sauer, the shell casing for the bullet, too, discharges from the firearm. After a bullet is discharged from a revolver, however, like the one used by the bank robber, the shell casing remains within the firearm. The two shell casings contained in the robber's discarded Webley revolver are consistent with the robber shooting once into the ceiling and once at the SPD officer during and in relation to the armed bank robbery.

## Conclusion

23.    Based on the foregoing, I believe probable cause exists that on May 1, 2019, Daniel ROSADO:

   a.  by force and violence and by intimidation, did take from the person and presence of another, money, in the amount of $929, more or less, belonging to and in the care, custody, control, management, and possession of Middlesex Federal Savings Bank, a bank insured by the Federal Deposit Insurance Corporation, and in so doing, did assault and put in jeopardy the life of another person by the use of a dangerous weapon and device, in violation of 18 U.S.C.§ 2113(a) and (d);

   b.  knowingly used and carried a firearm, to wit a Webley Mark IV .38 caliber revolver, during and in relation to a crime of violence, to wit: armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and in furtherance of such crime, possessed and discharged and brandished the firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (iii); and,

c.  after having been previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, a Webley Mark IV .38 caliber revolver, in violation of 18 U.S.C. § 922(g)(1).

_____

JOHN OLIVEIRA
TASK FORCE OFFICER, FBI

Sworn and subscribed to before me this 22 day of May 2019.

_____

DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE