UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 19-10219-LTS |
| DANIEL ROSADO, | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this Sentencing Memorandum in the above-captioned case, currently scheduled for sentencing on September 21, 2020.  For the reasons outlined in this memorandum, the Government believes that a sentence of 225 months' imprisonment, the high-end of the guidelines, is the appropriate sentence in this matter.  Following the completion of this sentence, the Government requests that the defendant be on supervised release for a period of 60 months, and be required to pay a mandatory special assessment of $300.

## I.   PROCEDURAL HISTORY

On May 24, 2020 , Daniel Rosado ("Rosado") pled guilty to a three-count indictment charging him with: Count One-armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d); Count Two-being a previously convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C.§ 922(g)(1); and Count Three-discharging a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(C)(1)(a)

1

and(iii). Rosado is currently in the custody of the United States
Marshal.

**II.   THE OFFENSE CONDUCT**

The facts, as stated in the Presentence Investigation
Report ("PSR"), are largely uncontested.

**A. The Robbery**

On May 1, 2019, at approximately 10:00 a.m., an individual,
later identified as Rosado entered a branch of the Middlesex
Federal Savings Bank ("the Bank").  Upon entering the Bank
Rosado withdrew a firearm, pointed the firearm at the Bank's
employees and customers, and then fired one round into the
Bank's ceiling.  Witnesses inside the Bank recalled hearing
Rosado say, prior to discharging the firearm, words to the
effect, "get down, everybody on the ground, give me the money or
I will shoot."  In response to Rosado's action and his
statements, employees and customers went to the ground.  Rosado
then threw a backpack at a Bank employee and made an additional
verbal demand for the Bank's money.  The employee complied with
Rosado's demands, removed currency from her cash drawer, and
placed the currency in Rosado's backpack.

A Bank customer, who had been inside the Bank at the time
of the robbery, exited the Bank, flagged down a uniformed
Somerville Police Officer ("the Officer"), and informed the
Officer of the robbery inside the Bank.

The Officer entered the Bank, removed his firearm, pointed his firearm at Rosado and ordered him to freeze.  In response, Rosado turned toward the Officer and fired his weapon directly at the Officer.  The Officer then fired three rounds at Rosado,[1] who then with the backpack containing the Bank's currency, exited the Bank onto College Avenue with the Officer in pursuit.

Once on College Avenue, a witness known to the Government, observed the Officer chasing Rosado, and attempted to tackle Rosado.  The witness was unable to tackle Rosado but his attempt resulted in Rosado dropping the backpack.  The Officer gave chase but was unable to catch and arrest Rosado.

The backpack was later secured by law enforcement and found to contain a .38 caliber Webley Mark IV six-shot revolver,[2] $929 in US currency,[3] and other items to include a cloudy glass pipe.

**B. The Identification and Arrest of Rosado**

The Bank's surveillance cameras were functioning and operating on the date of the robbery and captured images of

---

[1] A video of the robbery and the interaction between Rosado and the Officer has been provided to the defendant in discovery and to the United States Probation Officer responsible for writing this PSR, and will be made available to the Court at sentencing.

[2] The revolver (a six shot) contained 2 spent casings, 3 intact rounds, and 1 intact round with a dimpled primer.

[3] A post-robbery audit determined that the Bank had lost $929 during the robbery.

3

Rosado entering the Bank, pointing a firearm at the Bank's employees and customers, firing a round into the Bank's ceiling and pointing and firing a round in the direction of the Officer.

The backpack seized by law enforcement was submitted for forensic analysis and determined to contain genetic material belonging to Rosado.  Based on this discovery Rosado's picture was later placed in a photo array and presented to a Bank employee who positively identified Rosado as the robber.

In the Bank, two spent projectiles attributable to Rosado's firearm discharge were later tested and determined to have been fired by the revolver recovered from the backpack carried by and later abandoned by Rosado.  One of the projectiles, determined to have been fired by Rosado's firearm, was in area where Rosado had fired into the Bank's ceiling, the other was in the area where the Officer entered the Bank. Three additional projectiles were recovered and determined to have been discharged from the firearm used by the Officer.

On May 22, 2019, following a period of investigation, Rosado was located and arrested.  Rosado was booked and later agreed to an interview, which was both video and audio recorded. During the interview, Rosado admitted to the robbery, firing his firearm into the Bank's ceiling, and to firing his firearm in the direction of the Officer in an attempt to "scare him," and expressed concern if his bullet struck the Officer. Rosado

4

stated that he wore gloves and a sweater to hide his tattoos. Rosado stated that following the robbery he returned to work and discarded the clothing he was wearing during the robbery. Rosado stated that law enforcement approached him following the robbery and asked if he saw or knew anything about the robbery, which he denied.  Rosado went on to state that he had purchased the firearm from an unknown male in 2018 in Rhode Island.

Following Rosado's arrest, law enforcement interviewed Rosado's girlfriend ("SM") who stated that she had received a series of text messages from Rosado on the day of the robbery. In these texts Rosado stated:

> 27 college st
> Please emergency
> I fucked up
> I'm sorry
> I love u tho 4 Eva

SM stated that prior to the robbery Rosado had purchased women's cosmetic/concealer makeup and was applying it to his arms and hands to cover up a series of tattoos.  Finally, SM was shown a picture of the robbery and positively identified Rosado as the individual robbing the Bank.

III. **GUIDELINE ANALYSIS**

    **A. Offense Level Computation**

    ¶¶ 35 and 36

The government agrees with Probation that Counts 1 and 2 are grouped together for guideline calculation purposes, and that the calculation for Count 1 is higher than Count 2.

    ¶¶ 37 and 38

The government agrees with Probation that the Base Offense Level for armed bank robbery is 20, and that the Base Offense Level is increased by 2 because property of a financial institution (Middlesex Federal Savings Bank) was the subject of the robbery.

    ¶ 39

The government agrees with Probation that the defendant's actions created a substantial risk of serious bodily harm to a law enforcement officer, during the course of the offense or immediate flight, knowing or having reasonable cause to believe that said person was a law enforcement officer.  Accordingly, the Base Offense Level should be increased 6-levels.

    ¶ 42

The government agrees with Probation that Rosado's Adjusted Offense level is 28.

¶¶ 44, 45 and 46

The government agrees with Probation that, with acceptance of responsibility the Adjusted Offense Level is reduced by 3-levels, which results in a Total Offense Level of 25.

## B. The Defendant's Criminal History

¶¶ 60 and 61

The Government agrees with Probation's conclusions that the defendant's criminal convictions results in a Criminal History score of 9, and that a Criminal History score of 9 establishes a Criminal History Category of IV.

## C. Sentencing Options

¶ 112 Guideline Provisions

The Government further agrees with Probation that with a Total Offense Level of 25, and a Criminal History score of IV, Rosado's guideline imprisonment range is 84 to 105 months. Furthermore, that Count Three requires a 120-month term of imprisonment which shall be imposed consecutive to any other term of imprisonment, establishing an effective guideline imprisonment range of 204 to 225 months' imprisonment.

## IV. SENTENCING RECOMMENDATION

18 U.S.C. § 3553(a) requires a sentencing court to consider specific enumerated factors when determining an appropriate sentence.  These factors include: 1) the nature and circumstances of the offense and the history and characteristics

of the defendant and 2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.

### A.   Rosado's Lengthy Record of Criminal Convictions and Criminal Behavior

Rosado has a lengthy record of criminal arrests and convictions commencing in 2006.  According to the PSR, Rosado has been arrested on 18 separate occasions and convicted of these offenses on 10 separate occasions.  These convictions include multiple counts of receiving stolen motor vehicles (¶¶ 50,51 and 52), vandalism, motor vehicle violations, drug offenses, breaking and entry (¶¶ 56 and 58), threats and assault with a dangerous weapon (hammer).  In 2012, Rosado was charged with negligent operation of a motor vehicle.  This incident, which is not contested in the PSR, involved Rosado being involved in a high-speed auto chase and crash which resulted in four individuals being injured and requiring med-flight to Boston hospitals.  Witnesses to the incident described Rosado as the driver of one of the vehicles and that he caused the accident by slamming into another vehicle. (PSR ¶ 59).  Rosado has been sentenced on two occasions with prison terms ranging

from six months to two years. In many of his cases Rosado has been in violation of his terms of probation.

The Government would note, that Rosado was arrested on eight separate dates which resulted in charges being dismissed (PSR ¶ ¶ 64-71), and that four of those dismissed charges involve allegations of threats or assault and battery.

According to the PSR, between 2007 and 2012, Rosado has been a defendant in five domestic restraining orders. While classified under Massachusetts law as civil, these restraining order reflect violent criminal behavior, and an unwillingness to conform his behavior and correspond to criminal charges being levied against him (PSR ¶¶ 89-93).

The defendant's personal history shows that he successfully completed high school and vocational school without issues. PSR ¶ 100. Up until the instant offense and but for periods of incarceration, he maintained gainful employment for many years as a welder and cell tower technician. PSR ¶¶ 102-106. While he self-reported metal health and substance abuse issues, none were verified by probation.  PSR ¶¶ 97-99. Despite a self-reported, and uncorroborated, difficult upbringing, the defendant's background and personal history shows that he is capable of distinguishing right from wrong. Thus, he understood the impact that his violent crime had on the victims, including the bank

customers, bank employees, law enforcement officers and
community.

> **B.    The Instant Offense**

On the date of the instant offense, Rosado, armed with a
firearm, violently robbed a branch of the Middlesex Federal
Savings Bank and discharged his firearm on two separate
occasions – once in the ceiling to instill fear in the bank
customers and employees and then in the direction of a uniformed
Somerville Police Department officer.  The Government maintains
that this was not a random act but rather a pre-planned event.
On the day of the robbery, Rosado brought a loaded gun and a
change of clothes with him to work. Prior to the robbery, Rosado
covered his tattoos with gloves, recently purchased makeup
concealer and a sweatshirt to avoid detection.  Following the
robbery, Rosado deliberately tried to avoid detection when he
discarded his clothes in an incinerator in a nearby building and
went up to the roof the building to work on it as a cell tower
technician. When confronted by an officer who responded to
investigate the robbery, Rosado denied even knowing it had
occurred. During the robbery, Rosado entered the Bank,
brandished a firearm, pointed the firearm at Bank employees and
customers and ordered everyone to the ground.  For further
effect, and to reinforce his violent intentions, Rosado then
fired a shot into the Bank's ceiling causing terror and

commotion among the Bank's employees and customers. The responding Officer, in full uniform, entered the Bank, withdrew his own firearm and ordered Rosado to freeze.  Rosado, instead of complying with the Officer's commands escalated the situation by firing a shot at the Officer, endangering not only the Officer's life, but potentially others inside and outside the Bank. Rosado left the Officer with no choice but to return fire potentially endangering Rosado's life or any other individuals inside and outside the Bank.  Rosado then exited the Bank with the Bank's money and his firearm and a chase ensued.

### C. Victim Impact

The victim impact statements regarding the events of May 1, 2019 have been provided by the Government to Probation, Defense, and Court.  Despite the pandemic we are suffering, a number of these victims plan on appearing in open Court and presenting testimony during Rosado's sentencing hearing on Monday September 21, 2020.  These victims' statements have echoed, in summary, the impact Rosado's senseless and violent actions have had on them personally and the impact on their families.

The aftermath of the robbery left many unable to fully recount their horrific experiences to the Court through written victim impact statements. In the weeks following the robbery, many of the Bank's employees, who were in the Middlesex Federal Bank, in their own words, suffered from restless nights and had

trouble concentrating, eating, and carrying on the basic functions of daily life. They repeatedly replayed the events of May 1, 2019, which inflicted constant anxiety, manifesting itself in being cautious of others and being hyperaware of their surroundings. Those who were able to escape during the robbery had difficulty exiting the building, which caused extreme levels of anxiety.  Horrible memories lingered. During the robbery, many of the employees, who were parents, thought about what would happen if they did not make it home and left their children without a parent. One victim thought of her daughter and realized she might not live to see her walk down the aisle at her wedding the upcoming weekend. When the Bank's employees came back to work, many of them feared that Rosado would come back to harm them. Children begged their parents, a number of them single mothers, not to go back to work, for fear they would never see them again. The employees' children suffered from constant fear and worry. The press coverage forced the victims to relive the trauma. The disruption to daily work also impacted the bank's operations as a whole and negatively impacted productivity. The events of that day were terrifying, and everyone who witnessed it has been able to handle it in ways that are comfortable for them. They have stated that no amount of therapy, repairs, security changes, or time, however, will ever change or heal the damage that Rosado inflicted. One victim

stated, in substance, that Rosado stole a sense of safety and security from the Bank's employees and their families. Finally, another victim concluded that there will always be a part of each employee that is broken, because of Rosado.

The responding Somerville Officer has also indicated a desire to appear at sentencing and address the Court and explain the impact Rosado's senseless actions had on him, his family, and on the Somerville Police Department. Rosado's actions placed the Officer the Bank's employees, and its customers, in a life-threatening situation and forced the Officer to make a split-second decision potentially endangering both Rosado's life and others.

### D.  Other 18 U.S.C. § 3553 Factors

The Government believes that during Rosado's anticipated period of imprisonment, he should avail himself of what appears to be much need counseling to address drug and alcohol issues. Additionally, Rosado will have the opportunity to address any mental health issues through available programs and counseling.

### V.  CONCLUSION

No one should fear doing every day, basic errands, like going to the bank. Nor should anyone fear working in one. But, on May 1, 2019, Rosado callously threatened the lives of innocent people who were doing just that. He did not just brandish but instead fired a weapon twice and etched a permanent

13

fear in the minds of and endangered the lives of bank customers, bank tellers and the community surrounding Davis Square in Somerville. The only reason for doing so was in response to his own greed, selfishness and frustrations with personal issues.

Rosado actions in entering the Bank and assaulting Bank employees and customers with his firearm, and discharging his firearm in the Bank at the responding Somerville Officer are outrageous and cannot be treated lightly. Rosado has a lengthy criminal record and has demonstrated a refusal to conform his behavior to acceptable societal norms. This behavior cannot and should not continue. The Government is well within its rights to demand a maximum sentence of 35 years' imprisonment[4] for the bank robbery and the discharging of the firearm. The Government however, for the reasons stated herein, requests this Court impose a sentence at the high-end of the advisory guideline range of 225 months' imprisonment. Following completion of this sentence, the Government requests that Rosado be placed on Supervised Release for the statutory maximum period of 5 years, and a be ordered to pay a mandatory special assessment fee of $300.

---

[4] The robbery of the bank carries a maximum penalty of 25 years' imprisonment to be followed by a consecutive term of 10 years due to the discharge of the firearm.

14

This is a just and appropriate sentence as dictated by Rosado's own senseless and violent actions on the morning of May 1, 2019, and by Rosado's own decisions throughout his lifetime. This type of sentence sends a clear message that this type of violent criminal behavior cannot and will not be accepted.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:  **/s/ Kenneth G. Shine**
KENNETH G. SHINE
LINDSEY E. WEINSTEIN
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

**/s/ Kenneth G. Shine**
KENNETH G. SHINE
Assistant U.S. Attorney